USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/31/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LILIAN KIRAKA,

                         Plaintiff,

         -against-                                    24-CV-02354 (MMG)

SUCCESS ACADEMY CHARTER SCHOOL,                       **OPINION & ORDER**
HUDSON YARDS et al.,

                         Defendants.

MARGARET M. GARNETT, United States District Judge:

Plaintiff Lilian Kiraka ("Plaintiff"), proceeding *pro se*, brings this action on behalf of her son ("PS") against Success Academy Charter School, Hudson Yards ("Success Academy") and Principal Kayleigh Maines (together, "Defendants"), asserting various claims of discrimination, retaliation, and harassment in connection with PS's experience as a student at Success Academy and the ultimate withdrawal of PS from Success Academy. Before the Court is Defendants' motion to dismiss the Amended Complaint. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I.    RELEVANT FACTS[1]

Success Academy is a public charter school located in Midtown Manhattan. Am. Compl. at 4. Plaintiff is a resident of West New York, New Jersey, and the mother of PS, a young boy

---

[1] These facts, which are generally assumed true for purposes of deciding this motion, are derived principally from Plaintiff's Amended Complaint. *See* Dkt. No. 28 ("Am. Compl."). Additionally, the Court draws on Plaintiff's initial complaint, *see* Dkt. No. 1, her opposition to Defendants' motion to dismiss, *see* Dkt. 35 ("Opp."), and exhibits and attachments on which she relies. *See Montanez v. Lee*, No. 14-CV-03205 (NSR), 2016 WL 3866594, at *1, n.2 (S.D.N.Y. July 12, 2016) ("Though an amended complaint typically supplants, rather than supplements, a prior complaint, in the case of *pro se* plaintiffs, courts typically consider allegations in both an original and amended complaint."); *Mil'chamot v. New*

1

who attended kindergarten at Success Academy from August 2023 to February 2024. *Id.* at 9. PS is Black, his national origin is Tanzanian, and he was six years old when he attended Success Academy. *Id.* In school, PS showed "signs of hyperactivity, increased sensitivity, and behaviors commonly associated with learning disabilities and ADHD." *Id.* According to Plaintiff, PS exhibited a "perceived learning disability," and Defendants failed to accommodate it. *Id.* Plaintiff also asserts that Defendants discriminated against PS on the basis of his race and perceived learning disability as part of a "broader pattern of targeting black students with perceived learning disabilities." *Id.* at 9–10. Specifically, she alleges that Defendants maintain a "'got-to-go list,' similar to the one uncovered in past cases, where the school systematically target[s] certain disabled individuals of color for removal." *Id.*

Plaintiff recounts numerous purported examples of Defendants' wrongdoing, mostly centered around their response to PS's behavior at school. PS was repeatedly involved in behavioral incidents throughout his time at Success Academy, resulting in "frequent suspensions." *See id.* at 12. Plaintiff provides details for two such incidents. First, PS was suspended for "expos[ing]" himself to other students in September 2023. Opp. at 3. "Distracted by the commotion" caused by students making noise while PS was in the restroom, PS "opened the restroom door before he had pulled up his pants." *Id.* Second, PS was suspended in December 2023 after defecating on himself and allegedly laughing at the staff members who

---

*York City Hous. Auth.*, No. 15-CV-00108 (PAE), 2016 WL 659108, at *1 n.1 (S.D.N.Y. Feb. 16, 2016) ("[B]ecause a pro se plaintiff's allegations must be construed liberally, it is appropriate to consider factual allegations made in a *pro se* plaintiff's opposition papers [on a motion to dismiss], so long as the allegations are consistent with the complaint."); *Davis v. Horton*, No. 23-CV-00885 (JPC) (VF), 2025 WL 539658, at *3 (S.D.N.Y. Jan. 27, 2025) ("Material outside of the complaint may only be considered at the motion to dismiss stage if it is attached to the complaint, if the complaint incorporates it by reference, if the plaintiff relied on the document in bringing the suit, or if it is a document of which the Court may take judicial notice. The Court may also consider material attached to a *pro se* litigant's opposition to a motion to dismiss."), *report and recommendation adopted*, 2025 WL 522486 (S.D.N.Y. Feb. 18, 2025).

attempted to clean him up.  *Id.* at 4.  Additionally, "teachers frequently contacted the Plaintiff, sometimes more than six times a day, to express concerns about her son's physical health," including with respect to multiple instances of him urinating on himself.  Am. Compl. at 12.

Plaintiff contends that the behavioral issues were "clear signs that the child was struggling with adjusting to the school environment," Opp. at 3., but instead of accommodating PS's difficulties, Defendants allegedly subjected him to "disproportionately harsh discipline" and "continuous harassment."  *Id.*; Am. Compl. at 9.  Beyond the frequent suspensions, Success Academy staff allegedly treated PS more punitively than other children, such as when a teacher left him "crying and isolated in a corner" after taking food from him.  Am. Compl. at 12.  When a different staff member attempted to console PS, Maines allegedly intervened, "dismiss[ing] the child's distress, calling him a liar and instructing [the staff member] not to show any 'favor' or assistance."  *Id.*  Separately, Defendants failed to fully resolve a complaint by PS that another student had bullied him.  *Id.*  They also declined to display PS's academic achievements on a school portal, depriving him of the "same public recognition" given to other students despite his purported aptitude for mathematics.  *Id.* at 12–13.  Plaintiff maintains that these alleged examples of "disparate treatment and harsher punishment singled out [PS] from his peers and caused a disparate impact on his education and his developmental experiences at school."  *Id.* at 9.

Plaintiff alleges that she observed and experienced some instances of Defendants' discrimination firsthand.  On October 17, 2023, she approached Maines to request a meeting regarding PS.  *Id.* at 11.  In response, Maines allegedly told Plaintiff that PS, a six-year-old, was "a grown man and a bad child" and advised her that meetings should be arranged via email.  *Id.*  Later that same day, Plaintiff informed PS's teacher that she intended to pick him up from school

early after receiving "a distressing call informing her of an incident involving her son at school."
*Id.* After she arrived, she encountered Maines and a teacher, who "persisted in pressuring [her]
to discuss her son's situation." *Id.* Maines told Plaintiff, "Your son does not belong at Success
Academy. He should be removed immediately." *Id.* PS ultimately received a three-day
suspension until October 23, 2023, "which … Plaintiff believes was retaliatory in nature" in
response to her request for "an in-class observation to better understand her son's educational
environment." *Id.* During a separate incident in February 2024, Plaintiff alleges that Maines
"forcefully grabbed her from behind," which left her feeling "humiliated and distressed." *Id.* at
13.[2]

Defendants also allegedly interfered with Plaintiff's parenting of PS. In response to PS's
behavioral issues, Defendants placed PS in counseling sessions without Plaintiff's full informed
consent. *Id.* at 12. During the sessions, Defendants allegedly attempted to coerce PS into saying
that he was being mistreated at home, leading to emotional distress and confusion. *Id.* In
February 2024, Maines informed child protective services of suspected problems in PS's
homelife, including mistreatment of the child. *Id.* at 13. Plaintiff states that a subsequent
investigation found no evidence to substantiate Maines' concerns. *Id.* Plaintiff believes
Defendants made a false report to child protective services under the "pretext of concern" and
with the intent "to punish Plaintiff's family and pressure her to withdraw her son." *Id.*

On February 16, 2024, Defendants informed Plaintiff that PS would have to withdraw
from Success Academy if Plaintiff could not prove residency in New York City. *Id.* at 14.
Plaintiff had resided in New Jersey since PS joined Success Academy. *Id.* at 13–14. Plaintiff

---

[2] Defendants attempt to make an issue out of the fact that the original complaint states this incident occurred in February 2023, *see* Mot. at 5 n.7, but that was obviously a typographical error since PS did not even attend Success Academy until August 2023.

states that "the residency issue was a mere excuse to remove her son," that Defendants "previously approved" her residing outside of New York, and that a number of other families at Success Academy resided in New Jersey. *Id.* at 14. PS was withdrawn from Success Academy later that month. *Id.* Plaintiff contends that the withdrawal process did not afford PS procedural due process. *Id.*

## II.    PROCEDURAL HISTORY

Plaintiff filed a complaint on March 25, 2024, using a form made available to *pro se* litigants in this District. Dkt. No. 1. Plaintiff indicated on the form that she was asserting federal question jurisdiction and specified "deny my son education between school year" as the applicable violation of federal law. *Id.* at 2. In the "Statement of Claim" section of the form, she wrote: "refuse to provide my son education." *Id.* at 5. Plaintiff appended a letter asserting additional claims for: (1) "Failure to Provide Reason for Forced Withdrawal"; (2) "Unauthorized Counseling Sessions"; and (3) "Lack of Communication and Transparency." *Id.* at 8–9. She also attached nearly 200 pages of emails and text messages with Defendants. *See id.* at 12–101; Dkt. No. 1-1. The complaint requested various forms of relief, including disclosure of PS's school records, a detailed explanation of the reasons for PS's removal from Success Academy, "disciplinary action against responsible parties and implementation of policies to safeguard the right of student and parents," re-enrollment of PS in Success Academy, and compensation for emotional distress. *Id.* at 10. On July 23, 2024, Defendants moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. *See* Dkt. No. 20. Defendants argued that Plaintiff failed to identify any federal right to education and that the Court should decline to exercise supplemental jurisdiction over potential state-law claims, which Plaintiff had not adequately pled regardless. *See* Dkt. No. 21 at 1–2.

As permitted by the Court's Individual Rules, Plaintiff filed the Amended Complaint on August 23, 2024, in lieu of opposing Defendants' motion. Dkt. No. 28. She again invoked federal question jurisdiction, but instead of alleging violations of a purported right to education, she asserted violations of the "ADA; Section 504 of the Rehabilitation Act, [and] the US Constitution." *Id.* at 2. Her revised recitation of facts included new allegations that Defendants discriminated against PS on the basis of his race, national origin, and perceived learning disability. *Id.* at 9–14. On September 20, 2024, Defendants filed a renewed motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. *See* Dkt. No. 33 ("Mot."). The motion is now fully briefed and before the Court for decision. Dkt. Nos. 35, 36.

## DISCUSSION

### I.     LEGAL STANDARD

#### A.  Rule 12(b)(1)

A court properly dismisses a claim for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015).[3] "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

#### B.  Rule 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  A complaint therefore must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "some further factual enhancement."  *Twombly*, 550 U.S. at 555, 557.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  In sum, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

Additionally, "[a] document filed *pro se* is to be liberally construed, and *a pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In particular, "the pleadings of *a pro se* plaintiff . . . should be interpreted to raise the strongest arguments that they suggest."  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).  *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  Thus, although the Court is "obligated to draw the most favorable inferences" that a *pro se* complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled."  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## II.    FEDERAL CLAIMS

Liberally construed, Plaintiff asserts federal claims under the Individuals with Disabilities Education Act ("IDEA"), Title II of the Americans with Disabilities Act ("Title II" or "ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504" or "Rehabilitation Act"), the Equal Protection Clause of the Fourteenth Amendment, and the Due Process Clause of the Fourteenth Amendment.

### A.  IDEA Claim

The Court construes the Amended Complaint to assert a claim under the IDEA.  *See* Opp. at 1 ("Plaintiff alleges violations of the Individuals with Disabilities Education Act . . . .").  Defendants argue that the Court lacks jurisdiction over any IDEA claim because Plaintiff failed to exhaust administrative remedies before seeking relief in federal court.  *See* Mot. at 8–9.  The Court agrees that Plaintiff never exhausted her administrative remedies as required under the IDEA but disagrees that jurisdiction is lacking.  Nevertheless, the Court dismisses the IDEA claim for failure to state a claim.  *See Cyrus v. Lockheed Martin Corp*, No. 20-CV-06397 (AMD), 2022 WL 203750, at *2 (E.D.N.Y. Jan. 24, 2022) ("Although the defendants move to dismiss under Rule 12(b)(1), a court may still construe the motion as one to dismiss under 12(b)(6).").

The IDEA was enacted to "ensure that all children with disabilities have available to them a free appropriate public education."  20 U.S.C. § 1400(d)(1)(A).  A free appropriate public education ("FAPE") comprises "special education and related services—both instruction tailored to meet a child's unique needs and sufficient supportive services to permit the child to benefit from that instruction."  *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017).  Under the IDEA, an Individualized Education Program ("IEP") is the "primary vehicle" for providing a FAPE.  *Id.*

The IDEA statutory framework includes extensive administrative procedures that a plaintiff must exhaust before seeking relief in state or federal court for the denial of a FAPE. *See* 20 U.S.C. § 1415(l); *Fry*, 580 U.S. at 168. A plaintiff's failure to exhaust administrative remedies warrants dismissal under Rule 12(b)(6) for failure to state a claim. *See M.G v. Rye City Sch. Dist.*, No. 25-480, 2026 WL 520677, at \*2 (2d Cir. Feb. 25, 2026); *J.M. v. New York City Dep't of Educ.*, 161 F.4th 149, 154 (2d Cir. 2025) (holding that the IDEA's exhaustion requirement is a claim-processing rule and not a limit on the Court's jurisdiction).

The exhaustion requirement may be excused where the relevant administrative procedures would not provide an adequate remedy, and thus exhaustion would be futile. *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 205 (2d Cir. 2007). A plaintiff bears the burden of demonstrating that exhaustion would be futile. *See J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir. 2004). "To demonstrate futility, a plaintiff 'must demonstrate that adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process.'" *Z.Q. v. N.Y.C. Dep't of Educ.*, No. 22-939, 2023 WL 1486387, at \*2 (2d Cir. Feb. 3, 2023) (quoting *Coleman*, 503 F.3d at 205). In analyzing whether plaintiffs have proven that their failure to exhaust should be excused, courts should also consider "whether administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency." *J.S.*, 386 F.3d at 113.

The Amended Complaint never references the IDEA, but it does allege that Defendants "failed to provide the necessary accommodations for [PS] and made no effort to create an IEP." Am. Compl. at 9. In light of the liberal construction it must afford to *pro se* pleadings, the Court construes that allegation to assert a claim under the IDEA. However, even under the most liberal

9

reading, Plaintiff's submissions do not suggest that she ever attempted to pursue her IDEA claims within the required administrative framework before asserting them in this Court. Plaintiff appears to concede as much, arguing instead that the exhaustion requirement should be excused because the administrative process would be "futile in addressing the broader issues of discrimination and denial of civil rights." Opp. at 5. Besides this conclusory allegation, Plaintiff alleges no facts to demonstrate the unavailability of adequate remedies or that the wrongs alleged—concerning the provision of a FAPE—could not or would not have been corrected by resort to the administrative hearing process.

Plaintiff's submissions could be construed to argue that exhaustion would have been futile because of an unlawful policy or systemic violations by Defendants, but such arguments fail because the Amended Complaint seeks individualized relief based on the facts and circumstances unique to PS. Addressing Plaintiff's challenge to the adequacy of PS's education thus requires "a factually intensive inquiry into the circumstances of [PS's] case," which presents a case where "administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency." *J.M. v. New York City Dep't of Educ.*, 161 F.4th 149, 159 (2d Cir. 2025). For that reason, excusing Plaintiff from the exhaustion requirement is inappropriate. *See C.S. v. N.Y.C. Pub. Schs.*, No. 24-CV-07600 (JGK), 2025 WL 2549292, at *8 (S.D.N.Y. Sept. 4, 2025) (holding the futility exception did not apply where "plaintiffs principally allege that the defendants failed to provide a FAPE to individual students in specific ways, while asserting conclusorily that these specific failures were part and parcel of a generally applicable policy or practice").

Plaintiff failed to exhaust administrative remedies for her IDEA claim, and she has not shown that exhaustion would be futile.  Plaintiff therefore fails to state a claim under the IDEA.  Defendants' motion to dismiss the IDEA claim is granted.

## B.  ADA and Rehabilitation Act Claims

The Amended Complaint explicitly asserts claims under Title II of the ADA and Section 504 of the Rehabilitation Act.  *See* Am. Compl. at 2.  Like the IDEA, Title II and Section 504 provide protections for students with disabilities.[4]  *Fry*, 580 U.S. at 159–60.  But whereas the IDEA "protects only children . . . and concerns only their schooling," Title II and Section 504 "promise nondiscriminatory access to public institutions for people with disabilities of all ages." *Id.* at 155, 170.  And while "the only relief the IDEA makes available is relief for the denial of a FAPE," Title II and Section 504 address discriminatory conduct that may injure a student "in ways unrelated to a FAPE."  *Id.* at 168–69.

"The [IDEA's] exhaustion requirement also applies where plaintiffs seek relief under other federal statutes when relief is also available under the IDEA."  *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 112 (2d Cir. 2004).  However, when the "gravamen of a complaint . . . addresses disability-based discrimination" instead of the denial of a FAPE, a plaintiff's Title II and Section 504 claims are not subject to the IDEA's exhaustion requirement. *Id.* at 171–72.  Defendants appear to concede that is the case here, as they do not argue that

---

[4] Section 202 of the ADA provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]"  29 U.S.C. § 794(a).

Plaintiff's Title II and Section 504 claims must be dismissed for failure to exhaust administrative remedies. The Court agrees. *See Lawton v. Success Acad. Charter Schs., Inc.*, 323 F. Supp. 3d 353, 362 (E.D.N.Y. 2018) (holding that denial of a FAPE was not the gravamen of the complaint where plaintiffs alleged that defendants "placed them on a 'Got to Go' list intended to remove them" from the school and "deliberately targeted their children for removal from Success Academy" based on the students' actual or perceived disabilities).

Turning to the merits, courts generally analyze claims under Title II and Section 504 identically. *See Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015) ("As the standards for actions under these provisions of the ADA and the Rehabilitation Act are generally equivalent, we analyze such claims together."). Plaintiff asserts both discrimination and retaliation claims.

### 1.    Discrimination

"To establish a *prima facie* case of discrimination under either the ADA or Section 504, a plaintiff must allege that: (1) plaintiff is a qualified individual with a disability; (2) plaintiff was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (3) such exclusion or discrimination was due to plaintiff's disability." *Yzaguirre v. KIPP NYC Pub. Charter Schs.*, No. 24-CV-01500 (JPO) (GS), 2025 WL 795732, at *9 (S.D.N.Y. Feb. 7, 2025), *report and recommendation adopted sub nom. Yzaguirre v. Levin*, 2025 WL 804771 (S.D.N.Y. Mar. 13, 2025)). "Exclusion or discrimination may take the form of disparate treatment, disparate impact, or failure to make a reasonable accommodation." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016).

Defendants argue that Plaintiff's disability discrimination claims fail because the Amended Complaint does not allege that PS was disabled. Mot. at 10–11. Further, assuming PS was disabled, Defendants argue that Plaintiff fails to plead exclusion or discrimination. Any

12

disparate treatment claim must fail, they argue, because Plaintiff does not plead the requisite intent or causation. *Id.* at 11–12.  Any disparate impact claim must fail because Plaintiff does not plead a facially neutral policy that affected PS. *Id.* at 14.  And any failure to accommodate claim must fail because Plaintiff does not allege that she requested an accommodation for PS. *Id.* at 13–14.  The Court holds that Plaintiff alleges discrimination and intent sufficiently to plead a disparate treatment claim at this stage of the case.

"A disabled individual is one who: (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." *Jean-Charles v. City of New York*, No. 21-CV-03803 (DG) (RML), 2024 WL 5716606, at *16 (E.D.N.Y. Feb. 21, 2024), *report and recommendation adopted*, No. 21-CV-03803 (E.D.N.Y. Oct. 16, 2024).  An individual is "regarded as" disabled if he has been subjected to an action prohibited by the ADA "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).  "This is a question of intent, not whether the [individual] has a disability, and therefore merges with the causation inquiry" in the case of a disparate treatment claim. *Donkor v. Weill Cornell Med. Coll.*, No. 23-CV-00369 (VSB), 2025 WL 639313, at *4 (S.D.N.Y. Feb. 27, 2025).

The Amended Complaint alleges that Defendants observed and documented signs of learning disabilities in PS, including hyperactivity, increased sensitivity, impulsivity, and difficulties with attention.  Am. Compl. at 9.  It further alleges that Defendants maintained a practice of targeting students who displayed such signs and coercing them into leaving the school by subjecting them to abuse. *Id.* at 9–10.  Specifically, Plaintiff alleges that Defendants "treated [her] son as an outlier due to his developmental delays and perceived disabilities," including by

"suspend[ing] him repeatedly for behaviors tied to those needs." Opp. at 13. Plaintiff therefore alleges disability, exclusion or discrimination in the form of disparate treatment, and discriminatory intent. These allegations are sufficient to state a disability discrimination claim at the pleading stage. *See Lawton*, 323 F. Supp. at 363 (denying a motion to dismiss where plaintiffs alleged that students were subjected to disciplinary consequences because of their actual or perceived disabilities). Plaintiff does not invoke every magic word from the relevant pleading standard, but affording her submissions a liberal reading—as the Court must do—she plausibly alleges that Defendants regarded PS as having a learning disability and intentionally discriminated against him on that basis.

Plaintiff's alternative theories of exclusion or discrimination are unsupported, however. Her failure-to-accommodate theory fails because she does not allege that she requested an accommodation for PS, much less a reasonable accommodation. *See Moody v. Verizon Commc'ns Inc.*, No. 26-CV-00159 (GHW), 2026 WL 174460, at *2 (S.D.N.Y. Jan. 21, 2026) (dismissing failure to accommodate claims where the "complaint suggests that Defendants failed to reasonably accommodate his alleged disability, but Plaintiff does not set forth facts showing that he requested an accommodation or, if he did, whether the requested accommodation was reasonable."). A disparate impact theory likewise fails because Plaintiff does not allege "a significantly adverse or disproportionate impact on persons [with a disability] produced by a facially neutral practice." *Perricone-Bernovich v. Tohill*, 843 F. App'x 419, 421 (2d Cir. 2021); *see also B.C.*, 837 F.3d at 158. Nevertheless, her disability discrimination claims survive on a disparate treatment theory.

Defendants' motion to dismiss the ADA and Rehabilitation Act discrimination claims is denied.

## 2. Retaliation

The Amended Complaint alleges that "after the Plaintiff requested an in-class observation . . . her son was met with a three-day suspension" and that "Plaintiff believes [the suspension] was retaliatory in nature." Am. Compl. at 11. To state a claim for retaliation under the ADA and Rehabilitation Act, "a plaintiff must demonstrate that: (i) [s]he was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Ferrara v. Metro. Transp. Auth.*, No. 24-CV-09161 (JPO), 2026 WL 351084, at *6 (S.D.N.Y. Feb. 9, 2026).

Plaintiff fails to state a retaliation claim because she does not allege she was engaged in protected activity. "Protected activity is 'action taken to protest or oppose statutorily prohibited discrimination.'" *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000), *superseded on other grounds by* N.Y.C. Local L. No. 85). The requested in-class observation does not constitute protected activity because Plaintiff does not allege that she was protesting or opposing Defendants' alleged discrimination. Indeed, the Amended Complaint acknowledges that she requested an in-class observation merely "to better understand her son's educational environment." Am. Compl. at 11. Plaintiff's Opposition additionally alleges that she requested the observation "to address concerns regarding [PS's] treatment," Opp. at 14, but she still fails to connect the request to protected activity. Moreover, Plaintiff includes in her opposition a copy of an email regarding her request for an in-class observation and an offer from Defendants to discuss any of Plaintiff's concerns, to which Plaintiff replied, "I do not have any concerns." *Id.* at 18–19. Thus, at the very least, even if Plaintiff sufficiently alleges protected activity based on her request, she fails to allege that Defendants knew she was engaged in protected activity.

15

To the extent Plaintiff alleges retaliation based on any other actions, such as general complaints directed to Defendants, she likewise fails to allege that she took any actions to oppose unlawful discrimination. *See Batiste v. City Univ. of N.Y.*, 16-CV-03358 (VEC), 2017 WL 2912525, at *10 (S.D.N.Y. July 7, 2017) ("Complaining about general unfairness, unaccompanied by any indication that plaintiff's protected class status caused the unfairness, does not qualify as protected activity."). Further, even if she had alleged that she was engaged in protected activity, Plaintiff's retaliation claims still must fail because she does not adequately allege that Defendants were aware of her protected activity or that a causal connection exists between the protected activity and PS's suspension.

Accordingly, Defendants' motion to dismiss the ADA and Rehabilitation Act retaliation claims is granted.

## C. Section 1983 Claims

Plaintiff additionally alleges constitutional violations based on facts that substantially overlap with her disability discrimination claims. The Court construes the Amended Complaint to assert claims under 42 U.S.C. § 1983 against Defendants as state actors. *See Patrick v. Success Acad. Charter Schs., Inc.*, 354 F. Supp. 3d 185, 209 n.24 (E.D.N.Y. 2018) ("As operators of charter schools, the Success Academy Defendants are state actors for purposes of Section 1983 claims."). Plaintiff asserts both Equal Protection and Due Process claims.

### 1. Municipal Liability

As a threshold matter, Plaintiff may bring her Section 1983 claims against Success Academy. Charter schools are considered state actors like public school districts. *See id.* For purposes of Section 1983 claims, "school districts are considered to be local governments and are subject to similar liability as local governments." *J.L. v. N.Y.C. Dep't of Educ.*, 324 F. Supp. 3d 455, 469 (S.D.N.Y. 2018). Under the standards set forth in *Monell v. Department of Social*

16

*Services*, a local government can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality.  436 U.S. 658, 690–91, 698 (1978).  To state a Section 1983 claim against a municipality, a plaintiff must allege: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Savarese v. City of New York*, 547 F. Supp. 3d 305, 354 (S.D.N.Y. 2021).

Defendants argue that Plaintiff fails to allege a policy or practice by Success Academy that caused a constitutional violation. *See* Mot. at 16–17.  But Plaintiff clearly alleges that Success Academy kept track of disfavored disabled students of color through a "got-to-go" list and systematically employed certain tactics—such as harsh discipline of students or threats to report parents to child protective services—to harass those students and their parents and to coerce them to withdraw from the school.  Am. Compl. at 10–11; Opp. at 14.  A liberal construction of those allegations supports a claim that Defendants acted pursuant to an official policy or longstanding practice or custom. *See Jean-Charles*, 2024 WL 5716606, at *10 (holding that plaintiffs "adequately stated a *Monell* claim based on Success Academy's alleged policy of pushing out underperforming children or children with learning disabilities and using harassing tactics to force those children to leave"). *Monell* therefore does not bar Plaintiff's Section 1983 claims against Success Academy.

### 2.    Equal Protection Claims

The Court construes the Amended Complaint's allegations of race and national origin discrimination to assert claims under Section 1983 for violation of the Equal Protection Clause. As to Success Academy only, the same allegations assert a claim under Title VI of the Civil Rights Act of 1964, which forbids race, color, and national origin discrimination in federally

17

funded programs or activities, *see Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 218 (2022), and the Court will analyze that claim alongside the analogous constitutional claim.[5] The allegations supporting these claims largely track the allegations supporting Plaintiff's disability discrimination claims.  And like the disability discrimination claims, Plaintiff sufficiently pleads her Equal Protection claims.

To state an equal protection claim under Section 1983, a plaintiff must plead facts demonstrating (i) that they were treated differently from others "similarly situated," and (ii) "that such selective treatment was based on impermissible considerations such as race." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (quoting *Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 16 (2d Cir. 1999)).  "Plaintiffs at [the pleading] stage are not required to 'present detailed evidence about comparators' and instead only need assert 'factual allegation that similarly situated comparators exist.'"  *Haynes v. Exec. Chamber for Off. of Govenor of New York*, No. 23-CV-08051 (MKV), 2025 WL 935100, at *12 (S.D.N.Y. Mar. 27, 2025) (quoting *Mooney v. City of New York*, No. 18-CV-00328, 2018 WL 4356733, at *3 (S.D.N.Y. Sept. 12, 2018)).

Similarly, to state a claim under Title VI, "a plaintiff must show, through specific factual allegations, that '(1) the defendant discriminated on a prohibited basis; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for the defendant's action.'"  *Bibliotechnical Athenaeum v. Am. Univ. of Beirut*, 527 F. Supp. 3d 625, 632 (S.D.N.Y.

---

[5] A Section 1983 claim may "be brought against any individual responsible for the discrimination." *Saunders v. New York Convention Ctr. Operating Corp.*, No. 20-CV-5805-GHW, 2021 WL 4340793, at *14 n.8 (S.D.N.Y. Sept. 23, 2021).  In contrast, "a Title VI claim can only be asserted against an entity that receives federal financial assistance, not an individual." *Alba v. City of New York*, No. 23-CV-8619 (LAK) (BCM), 2025 WL 2420969, at *18 (S.D.N.Y. July 18, 2025), *report and recommendation adopted*, 2025 WL 2419573 (S.D.N.Y. Aug. 21, 2025).

2021) (quoting *HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-05881 (CS), 2012 WL

4477552, at *14 (S.D.N.Y. Sept. 27, 2012)), *aff'd*, No. 21-1642, 2022 WL 710896 (2d Cir. Mar.

10, 2022).  To survive a motion to dismiss, "the plaintiff must specifically allege the events

claimed to constitute intentional discrimination as well as circumstances giving rise to a

plausible inference of racially discriminatory intent."  *Moore v. City of N.Y.*, No. 15-CV-06600

(GBD) (JLC), 2017 WL 35450, at *14 (S.D.N.Y. Jan. 3, 2017).  At the pleading stage, a

"minimal inference of discriminatory motivation" is sufficient.  *Bhatnagar v. Parsons Sch. of

Design at the New Sch.*, No. 20-CV-2321 (LGS), 2021 WL 2333243, at *2 (S.D.N.Y. June 8,

2021)

Plaintiff alleges that Defendants, motivated by racial animus, specifically targeted PS and

other Black students for harassment, subjecting them to harsher discipline than White students

received for similar behaviors.  *See* Am. Compl. at 10 (alleging Defendants harassed PS and

other Black students to coerce their withdrawal from Success Academy, which "shows

[Defendants'] animus against Black students with disabilities"); *id.* at 14 ("The Plaintiff's son

was treated differently than other white students who had similar behavior."); Opp. at 14

("Plaintiff's son was subjected to harsher punishments than his white peers for similar

behaviors").  For reasons that echo the analysis of the disability discrimination claims, including

the generous pleading standard and the liberal interpretation afforded to *pro se* pleadings,

Plaintiff's allegations are sufficient to state a plausible claim for racial discrimination under

Section 1983 and Title VI.  Defendants' motion to dismiss the federal Equal Protection claims is

accordingly denied, except that the Title VI claim is dismissed against Defendant Maines,

because there is no individual liability under Title VI.

19

### 3.    Due Process Claims

The Amended Complaint alleges that Defendants repeatedly suspended and ultimately withdrew PS from Success Academy without due process, which the Court will construe as asserting a claim under Section 1983 for violations of the Due Process Clause of the Fourteenth Amendment.  Here, Plaintiff fails to state a claim.

A procedural due process claim is composed of two elements: "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process."  *Radwan v. Manuel*, 55 F.4th 101, 123 (2d Cir. 2022) (*quoting Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012)).  Under a liberal interpretation of her submissions, Plaintiff alleges that Defendants deprived PS of a property interest in his education.  *See* Am. Compl. at 14; Opp. at 8–9.  To state a Section 1983 claim based on the deprivation of property, "a plaintiff must first identify a property right, second show that the government has deprived him of that right, and third show that the deprivation was effected without due process."  *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013).

Plaintiff fails to plead a procedural due process claim because she cannot allege that P.S. had a property right to an education at Success Academy.  "The Fourteenth Amendment does not protect a free public education as a substantive fundamental right."  *Walker v. N.Y. State Dep't of Health*, 788 F. Supp. 3d 427, 497 (E.D.N.Y. 2025).  Although there is no federal constitutional right to a free public education, where a state establishes a public education system and requires children to attend, the state is "constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause."  *Goss v. Lopez*, 419 U.S. 565, 574 (1975).  On that basis, it is well settled that "New York's Constitution and laws create a Fourteenth Amendment-protected property interest in public education for children."  *Doe v. Levittown Pub. Schs. Bd. of Educ.*, No. 25-230, 2025 WL 3078612, at *2 (2d

Cir. Nov. 3, 2025).  However, "[t]here is no question that New York State structures its public school system such that each student has only the right to attend the school in the district in which he or she lives."  *Brewer v. W. Irondequoit Cent. Sch. Dist.*, 212 F.3d 738, 746 (2d Cir. 2000); *see also Martinez v. Bynum*, 461 U.S. 321, 328–30 (1983) ("A bona fide residence requirement, appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by residents [and] does not violate the Equal Protection Clause of the Fourteenth Amendment.").

Plaintiff alleges that she and PS resided in New Jersey at all relevant times.  *See* Am. Compl. at 9, 14; Opp. at 7.  Because PS did not reside in New York, he did not have a property right to a free public education in New York.  *See N.J. v. New York*, 872 F. Supp. 2d 204, 210 (E.D.N.Y. 2011) (noting that the right to a public education in New York "is not an absolute right to attend any public school in New York, but rather is limited to attending public schools within the school district where the individual is a resident").  Without alleging deprivation of a property right, Plaintiff fails to state a procedural due process claim.

In response, Plaintiff asserts that Defendants had "accepted her son's enrollment with full knowledge of her New Jersey address" and only raised the residency issue later as a pretext to remove him.  Opp. at 7.  Plaintiff's submissions could be read to argue that even though PS was technically ineligible to receive a public education at Success Academy, Defendants had nevertheless determined that he qualified for one (and in fact provided it to him), which conferred to PS a property right protected by constitutional guarantees of due process.  *See Vasquez v. City of New York*, No. 21-CV-09555 (LTS), 2022 WL 2819468, at *4 (S.D.N.Y. July 18, 2022) ("Once a state agency has determined that an individual qualifies to receive a benefit, the recipient may not be deprived of that benefit without due process of law.") (citing *Cleveland*

*Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).  The Court need not decide the merits of that argument because, even assuming PS had a right to an education specifically at Success Academy, Plaintiff does not sufficiently allege that he was deprived of that right without due process.

Plaintiff fails to allege any facts to support what she characterizes as the "forced withdrawal" of PS from Success Academy.  *See* Am. Compl. at 8, 13, 14.  She does not allege that Defendants took any action to expel PS, and the documents she appends to the original Complaint belie any suggestion that PS's withdrawal was decided by Defendants.  *See* Dkt. No. 1-1 at 96 (showing an email from Defendants to Plaintiff stating, "Thank you for letting us know that you are withdrawing [PS] from our school.").  Plaintiff merely alleges she was "contacted by the school with an ultimatum to provide a Manhattan address by the end of the day or face the withdrawal of her son."  Am. Compl. at 14.  She then alleges in conclusory fashion that "procedural due process was not followed" in effecting PS's withdrawal.  *Id.*

Even assuming Defendants did force PS's withdrawal, Plaintiff does not allege how the so-called "ultimatum" failed to provide notice and an opportunity to be heard on the residency issue.  *See* Dkt. No. 1-1 at 58 (reflecting an email from Maines to Plaintiff stating, "Unfortunately, we require proof of residency for enrollment.  It is essential that you provide proof of residency in order to remain enrolled").  In response to her opportunity to be heard, Plaintiff admitted to Defendants that she was unable to provide an eligible Manhattan address.  *See* Am. Compl. at 15.  Given that her concession effectively settled the fact that PS was unqualified to attend Success Academy, it is unclear what additional process he could have been entitled to (and Plaintiff does not allege any).

22

Moreover, regardless of any process lacking before the deprivation of PS's education, Plaintiff's due process claim must fail because PS could have sought a post-deprivation remedy via an Article 78 proceeding in New York courts. *See Marraccini v. Belmont*, No. 19-CV-08458 (VB), 2020 WL 5505364, at *9 (S.D.N.Y. Sept. 10, 2020) ("[A] considerable line of Second Circuit precedent holds that the availability of a post-deprivation Article 78 proceeding satisfies a plaintiff's constitutional right to procedural due process."); *Atallah v. N.Y. Coll. of Osteopathic Med.*, 94 F. Supp. 3d 448, 455–57 (E.D.N.Y. 2015), *aff'd,* 643 Fed. Appx. 7 (2d Cir. 2016) (collecting cases holding that Article 78 proceedings provide an adequate post-deprivation remedy to challenge expulsion).

As to the suspensions, which arguably could not have been remedied by a post-deprivation Article 78 proceeding because the Amended Complaint might be construed to allege systemic violations, *see Patrick*, 354 F. Supp. 3d at 210, the Supreme Court's decision in *Goss v. Lopez*, 419 U.S. 565 (1975), provides the relevant standard for due process requirements in the context of school discipline. For "short suspension[s], not exceeding 10 days," the *Goss* Court held that the Due Process Clause requires that a student be provided the "rudimentary precautions" of "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581. "The school must inform the student 'what he is accused of doing and what the basis of the accusation is.'" *Doe on behalf of Roe v. Levittown Pub. Schs. Bd. of Educ.*, No. 25-230-CV, 2025 WL 3078612, at *2 (2d Cir. Nov. 3, 2025) (quoting *Goss*, 419 U.S. at 582). "The school need not, however, provide the student with a formal hearing." *Id.* "In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred." *Goss*, 419 U.S. at 582.

Plaintiff does not allege that PS was deprived of "these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school." *Id.* at 581. She concedes that Defendants provided notices of the suspensions. *See* Opp. at 3–4. Her assertion that Defendants nevertheless failed to adequately explain the reason for the suspensions, *see id.*, cannot be squared with the rest of her allegations or the materials appended to her pleadings. *See id.* at 3–4 (recounting explanations that Plaintiff received from Defendants regarding incidents that led to PS's suspensions); *see also* Dkt. No 1-1 at 46 (reflecting a "suspension letter" to Plaintiff dated September 28, 2023, stating, "On 09/28/2023, your scholar engaged in outlier behavior by pushing another student" and noting that Plaintiff spoke with Defendants that same day); *id.* at 49–50 (reflecting a suspension letter stating, "On 10/06/2023 your scholar engaged in unsafe behavior by throwing his desk and refusing to follow directions given by teachers and school leaders" and scheduling a time for Plaintiff to speak to Defendants). Plaintiff's conclusory allegations to the contrary need not be credited. *See In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 424 n.1 (S.D.N.Y. 2021) ("Where a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss."); *DuBose v. SUNY Mar. Coll. Off. of Fin. Aid*, No. 24-CV-05547 (JLR), 2025 WL 1488983, at *1 (S.D.N.Y. May 23, 2025) ("Where a conclusory allegation in the complaint conflicts with a statement made in a document attached to the complaint, the document controls and the allegation is not accepted as true.") (quoting *Amidax Trading Group v. S.W.I.F.T. SCRL*, 607 F.Supp.2d 500, 502 (S.D.N.Y. 2009)); *Bailey v. New York L. Sch.*, No. 16-CV-04283 (ER), 2017 WL 6611582, at *7 (S.D.N.Y. Dec. 27, 2017), *aff'd*, No. 19-3473, 2021 WL 5500078 (2d Cir. Nov. 24, 2021) ("The same standard applies to motions to dismiss *pro se* complaints.").

Plaintiff likewise concedes that Defendants questioned PS about the incidents, *see* Opp. at 3, which satisfies the requirement of "only a 'rudimentary hearing' where 'the disciplinarian [himself] may informally discuss the alleged misconduct with the student.'" *Levittown*, 2025 WL 3078612, at *4. Considering the additional explanations that Plaintiff herself received, she fails to show why a more formal opportunity to be heard was required, especially given that she does not deny the accusations against PS or allege that PS ever denied them. *See Goss*, 419 U.S. at 581 (holding that a student must receive "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story") (emphasis added). Rather, she merely disagrees with Defendant's disciplinary choices.[6] *See* Opp. at 3 (alleging that PS was often suspended "for behaviors that should have been understood as developmentally appropriate for a six-year-old child."); *id.* ("The suspension was imposed without offering any support or understanding for the child's development stage."); *id.* at 4 ("Instead of addressing the situation with care and understanding, the school punished the child for an accident, demonstrating a lack of reasonable accommodations for his developmental needs.").

Accordingly, Plaintiff's claims for alleged deprivations of due process are dismissed.

## III. STATE LAW CLAIMS

In addition to the claims under federal law discussed above, Plaintiff asserts "related state law claims, and any other claims that the Judge should see applicable." Considering Plaintiff's allegations as a whole and affording her special solicitude as a *pro se* Plaintiff, the Court interprets Plaintiff to assert due process claims under the New York State Constitution and New

---

[6] Of course, Plaintiff also contends that these choices were motivated by racial or disability-based animus, but, as discussed above, those are substantive discrimination claims and not allegations that can support a procedural due process claim.

York Education Law Section 3214(3)(c)(1), and claims under New York law for intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), and assault/battery. Defendants argue that all state claims are barred because Plaintiff failed to timely serve notices of claim as required under New York law, and that the due process, IIED, NEID, and assault/battery claims should be dismissed for failure to state a claim. *See* Mot. at 18–24. The Court agrees, except with respect to the IIED and battery claims against Maines.

### A. Notice of Claim Requirement

"New York law requires a plaintiff to file a notice of claim prior to commencement of an action against a school district and/or its employees within 90 days after the claim arises." *Lawton*, 323 F. Supp. 3d at 368. "This requirement has been extended to charter schools." *Id*. "Notice of claim requirements 'are construed strictly by New York state courts,' and failure to comply with these requirements 'ordinarily requires a dismissal for failure to state a cause of action.'"[7] *King v. New York City Dep't of Educ.*, No. 23-CV-07622 (ER), 2025 WL 2083831, at *5 (S.D.N.Y. July 24, 2025) (quoting *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793–94 (2d Cir. 1999)).

As to Success Academy, "Section 3813(1) of the New York Education Law requires a plaintiff bringing any claim against a school district, board of education, or any officer thereof to present a written notice of the claim to the governing body of the school board within three months of the accrual of the claim." *Gehlaut*, 2024 WL 456822, at *7. "This notice requirement applies to all state and municipal claims, including 'to causes of action sounding in

---

[7] To be clear, the notice of claim requirement does not apply to federal claims. *See Gehlaut v. New York City Dep't of Educ.*, No. 22-CV-07862 (AMD) (LB), 2024 WL 456822, at *7 (E.D.N.Y. Feb. 6, 2024), *aff'd*, No. 24-1741, 2025 WL 2586770 (2d Cir. Sept. 8, 2025).

discrimination, retaliation, and defamation.'" *Id.* (quoting *Smith v. N.Y.C. Dep't of Educ.*, 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2011)).

As to Maines, a school principal is not considered an "officer" of a school district for purposes of Section 3813(1). *Hall v. New York City Dep't of Educ.*, No. 23-CV-10385 (JGK), 2024 WL 4979288, at *8 (S.D.N.Y. Dec. 3, 2024). However, Section 3813(2) applies Section 3818(1)'s notice of claim requirement "to all claims 'against any teacher or member of the supervisory or administrative staff or employee where the alleged tort was committed by such teacher or member or employee acting in the discharge of his duties within the scope of his employment.'" *King.*, 2025 WL 2083831, at *5 (quoting N.Y. Educ. L. § 3813(2)).

Plaintiff does not allege that she filed the required notices. Therefore, the Court dismisses Plaintiff's state-law claims against Success Academy and any tort claims against Maines "where the alleged tort was committed by [Maines] acting in the discharge of [her] duties within the scope of [her] employment." N.Y. Educ. Law § 3813; *see also King*, 2025 WL 2083831. The Court clarifies this holding with respect to each claim below.

## B. Due Process Claims

For the reasons stated above, Plaintiff's state-law due process claims against Success Academy are barred because Plaintiff never served a notice of claim. To the extent plaintiff asserts a procedural due process claim under the New York Constitution against Maines, the claim fails for the same reasons that mandate dismissal of her analogous federal claim because the "due process guarantees of the New York Constitution have been interpreted by New York courts generally to be coextensive with federal due process protections," with certain exceptions not relevant here. *DeMartino v. New York State Dep't of Lab.*, 167 F. Supp. 3d 342, 374 (E.D.N.Y. 2016), *aff'd in part, dismissed in part on other grounds,* 712 F. App'x 24 (2d Cir. 2017).

Independent of any constitutional due process claim, the Amended Complaint could also be read to assert a claim under New York Education Law Section 3214(3)(c)(1), which provides certain procedural safeguards in connection with school suspensions, including the requirement of a hearing.  However, those safeguards explicitly apply only in cases of suspensions "for a period in excess of five school days."  Plaintiff does not allege that PS was ever suspended for longer than five school days, so she does not state a claim under the New York Education Law for allegedly deficient process surrounding the suspensions.

Therefore, all state-law claims alleging deprivations of process are dismissed.

## C.  IIED and NIED Claims

The Amended Complaint seeks compensation for emotional distress, *see* Am. Compl. at 15, which the Court reads to assert claims for IIED and NIED.  Plaintiff generally alleges that she was "scared and stressed about how her son was being treated in school," including as a result of Defendant Maines' comments about PS's behavior and assertions that PS was unfit for Success Academy.  Am. Compl. at 11.  She additionally alleges that she and her family were distressed by false allegations of PS's mistreatment at home and by Maines' false report to child protective services.  *See* Am. Compl. at 12–13.

Again, the claims against Success Academy are barred due to Plaintiff's failure to serve a notice of claim.  In any event, "[i]t is well settled that public policy bars claims sounding in intentional infliction of emotional distress against a governmental entity." *Wright v. City of New York*, No. 23-CV-03149 (KPF), 2024 WL 3952722, at *11 n.12 (S.D.N.Y. Aug. 27, 2024) (quoting *Lauer* v. *City of New York*, 659 N.Y.S.2d 57, 58 (2d Dep't 1997)); *see also Blanco v. Success Acad. Charter Schs., Inc.*, 722 F. Supp. 3d 187, 219 (S.D.N.Y. 2024) (dismissing claim against a charter school).  The IIED claim against Maines requires a separate analysis.

28

The Court recognizes that some Courts have dismissed IIED claims against individual defendants based on a plaintiff's failure to comply with New York's notice of claim requirement. *See Jean-Charles*, 2024 WL 5716606, at \*7; *A.M. by Manara v. J.S. by Sergeant*, No. 22-CV-03421 (NSR), 2023 WL 7301313, at \*5 (S.D.N.Y. Nov. 3, 2023).  However, in their motion, Defendants do not argue why the notice of claim requirement applies to the IIED claim against Maines.  To reiterate, the notice requirement applies to claims "against any teacher or member of the supervisory or administrative staff or employee [of a school] where the alleged tort was committed by such teacher or member or employee <u>acting in the discharge of his duties within the scope of his employment</u>."  N.Y. Educ. L. § 3813(2) (emphasis added).

Liberally construed, Plaintiff's allegations of Maines' intentional misconduct (including but not limited to her alleged remarks about PS, her physical contact with Plaintiff, and her allegedly false report to child services about PS's home environment) could be sufficient to allege that Maines was not acting within the scope of her employment.  *See Longsworth v. Cnty. of Nassau*, No. 17-CV-06787 (KAM) (ARL), 2020 WL 5369044, at \*3 (E.D.N.Y. Sept. 8, 2020) ("Where the conduct alleged in the complaint amounts to intentional torts, it falls outside the scope of the employee's employment."); *Cf. Rizzuto v. City of New York*, No. 17-CV-7381 (DG) (ST), 2023 WL 5018484, at \*5 (E.D.N.Y. Feb. 24, 2023), *report and recommendation adopted*, No. 17-CV-07381 (DG) (ST), 2023 WL 4446659 (E.D.N.Y. July 11, 2023) (noting in the context of New York General Municipal Law Sections 50-e and 50-i, which require a notice of claim for tort claims against certain entities, that the "notice of claim requirements do not apply to the contract-based claims and/or intentional tort claims but only apply to certain types of state law tort claims for damages involving the unintentional negligence (or unintentional wrongdoing)"). *But see Poux v. Cnty. of Suffolk*, No. 09-CV-03081 (SJF) (WDW), 2010 WL 1849279, at \*13

(E.D.N.Y. May 4, 2010) ("Nonetheless, an employee's intentional conduct may be said to have been within the scope of his employment when his employer could have reasonably anticipated the conduct."). Defendants have not attempted to show why Plaintiff's allegations are insufficient to show that Maines acted outside the scope of her employment, and the Court has no basis in the record to resolve that factual issue at this stage.[8]

Alternatively, Defendants challenge the sufficiency of Plaintiff's allegations with respect to the elements of an IIED claim. To state a claim for IIED under New York law, a plaintiff must plead: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999); *see also Biswas*, 973 F. Supp. 2d at 535. Defendants argue that Plaintiff fails to meet the high bar for alleging "extreme and outrageous conduct," fails to allege intent, and insufficiently alleges that she suffered emotional distress. *See* Mot. at 19–22.

The allegations in the Amended Complaint are sufficient to state an IIED claim. It is true that the IIED pleading requirements, "especially that of extreme and outrageous conduct, 'are rigorous and difficult to satisfy.'" *Moraes v. White*, 571 F. Supp. 3d 77, 104 (S.D.N.Y. 2021) (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993)); *see also Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985) (The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."); *Sesto v. Slaine*, 171 F. Supp. 3d 194, 202 (S.D.N.Y. 2016) (noting that intentional infliction of emotional distress claims are frequently

---

[8] Of course, the facts surrounding whether Maines acted within the scope of her employment could also implicate the viability of Plaintiff's *Monell* claims, but any tension between the *Monell* claims and the IIED claim is better resolved at the summary judgment stage.

30

dismissed on pre-answer motions). But the Appellate Division has held that false reports of child mistreatment *could* meet that high bar. *See Scollar v. City of New York*, 160 A.D.3d 140, 144 (2018) ("We find that the complaint states claims against [defendant] for intentional infliction of emotional distress based on her alleged malicious or reckless false reporting to [the New York City Administration for Children's Services] and her campaign of harassment."). Further, liberally construing her pleadings, Plaintiff alleges that Maines was personally involved in making the allegedly false report, and that she had the intent to harass and intimidate Plaintiff in furtherance of a discriminatory purpose. *See* Am. Compl. at 10, 13 ("These tactics included harassing parents to coerce them into withdrawing their children from the school and using child protective services as a threat to intimidate parents."). And given the nature of the alleged accusations, Plaintiff plausibly alleges that she suffered substantial emotional distress. *See id.* at 12–13. She therefore states an IIED claim.

### D. Negligent Infliction of Emotional Distress

"A plaintiff cannot sustain a negligent infliction of emotional distress claim when her claim relates to intentional conduct." *Oliver Cyrus v. Lockheed Martin Corp.*, No. 22-CV-4115 (AMD) (TAM), 2025 WL 964016, at *11 (E.D.N.Y. Mar. 31, 2025). Plaintiff does not allege that Defendants acted negligently. She instead premises the entirety of her pleadings on Defendants' alleged intentional harassment and discrimination. Such allegations cannot support a claim grounded in negligence, including negligent infliction of emotional distress. *See Cherner v. CF Bankshares Inc.*, No. 24-CV-02812 (PMH), 2025 WL 1745864, at *20 (S.D.N.Y. June 23, 2025) ("[Plaintiff's] emotional distress allegations all bear the hallmark of allegations of intentional misconduct and thus must be dismissed . . . .").

31

### E. Assault/Battery

Plaintiff alleges that "[o]n February 7, 2024, while dropping her son off at school, the Plaintiff was physically harassed by Principal Maines, who forcefully grabbed her from behind." Am. Compl. at 13.  Plaintiff was left "feeling humiliated and distressed." *Id.*  The Court construes these allegations to assert a claim for assault and/or battery.  "Under New York law, [a] civil assault is an intentional placing of another person in fear of imminent harmful or offensive contact, whereas a civil battery is an intentional wrongful physical contact with another person without consent." *Cheikhaoui v. City of New York*, No. 22-CV-08855 (CM), 2023 WL 5917646, at *5 (S.D.N.Y. Sept. 11, 2023) (quoting *Charkhy v. Altman*, 252 A.D.2d 413, 414 (1st Dep't 1998)).  As with the IIED claim, the Court will address the merits of the assault and battery claims because Defendant has not challenged the sufficiency of Plaintiff's allegations that Maines acted outside the scope of her employment, and the current record does not allow for that issue to be resolved.

To state a claim for assault, "a plaintiff must allege intentional physical conduct placing the plaintiff in imminent apprehension of harmful contact." *Brown v. Montefiore Med. Ctr.*, No. 18-CV-03861 (PGG) (KHP), 2019 WL 4454230, at *11 (S.D.N.Y. May 8, 2019), *report and recommendation adopted*, 2019 WL 3282927 (S.D.N.Y. July 22, 2019).  Plaintiff's allegations fall short because she does not allege that she was placed in apprehension of harmful contact when Maines grabbed her arm.  Her assault claim is therefore dismissed.

To state a claim for battery, a plaintiff must allege: "(1) there was bodily contact between the plaintiff and the defendant, (2) the contact was offensive, and (3) the defendant intended to make the contact without the plaintiff's consent." *Cheikhaoui*, 2023 WL 5917646, at *5.  Contact is offensive if it is "wrongful under all the circumstances." *Giuffre v. Andrew*, 579 F. Supp. 3d 429, 450 (S.D.N.Y. 2022).  "The alleged contact must be one which would offend the

32

ordinary person not unduly sensitive as to his personal dignity.  It must, therefore, be a contact which is unwarranted by social usages prevalent at the time and place at which it is inflicted." *Ramirez v. Temin & Co., Inc.,* No. 20-CV-06258 (ER), 2021 WL 4392303, at *19 (S.D.N.Y. Sept. 24, 2021).  "The only intent required is an intent to cause a bodily contact that a reasonable person would find offensive."  *Giuffre,* 579 F. Supp. 3d at 450.

Defendants argue that Plaintiff fails to allege offensive contact and intent.  Liberally construing the allegation that Maines "forcefully grabbed" Plaintiff, which suggests volition, the Amended Complaint sufficiently alleges Maines' intent to cause bodily contact.  As to offensiveness, whether the ordinary person would be offended if someone forcefully grabs them from behind "is an issue of fact that cannot be decided on a motion to dismiss."  *Ramirez*, 2021 WL 4392303, at *19 (quoting *Cohen*, 926 F. Supp. at 402 (denying motion to dismiss where plaintiff alleged defendant grabbed her arm to prevent her from leaving the room)).  Plaintiff therefore states a claim against Maines for battery.

## IV.   LEAVE TO AMEND

District courts typically should not dismiss a *pro se* plaintiff's complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal references omitted).  Leave to amend "may be denied when a plaintiff has already been given an opportunity to amend."  *Ruscelli v. Dep't of Educ. of City of New York*, No. 23-CV-07475 (AMD) (MMH), 2026 WL 381642, at *9 (E.D.N.Y. Jan. 7, 2026).  Additionally, when "the barriers to relief . . . cannot be surmounted by reframing the complaint," leave to amend is properly denied as futile.  *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013).

Ultimately, "it is within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).

Plaintiff has already amended her pleadings once, doing so in response to the arguments raised in Defendant's first motion to dismiss. Given the prior amendment, the survival of her principal claims on Defendant's second motion to dismiss, and the likely futility of any additional amendments, the Court declines to grant Plaintiff leave to amend her complaint again.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt. No. 32) is GRANTED with respect to the IDEA claims against both Defendants, the Due Process claims against both Defendants, the ADA and Rehabilitation Act retaliation claims against both Defendants, and claims under the New York State Constitution and New York Education Law Section 3214(3)(c)(1) against both Defendants; as well as all other state-law claims against Success Academy, and the assault, NIED, and Title VI claims against Maines. The Motion is DENIED with respect to the ADA and Rehabilitation Act discrimination claims against both Defendants, the Equal Protection Clause claims against both Defendants, the Title VI claim against Success Academy; and the IIED and battery claims against Maines.

Dated: March 31, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge

34